[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO MODIFY CHILD SUPPORT POST-JUDGMENT
The marriage of the parties was dissolved by judicial decree on October 20, 1998. The defendant was ordered to pay child support to the plaintiff in the amount of $100.00 per week, and in addition, to pay $77. 50 per week for daycare costs for the one minor child, Anthony M. Lanata, born July 19, 1995. It is important to note that the dissolution hearing proceeded on an uncontested basis. The defendant filed a financial affidavit indicating a net weekly loss of income in the amount of $230.00 per week. The plaintiff's financial affidavit filed with the Court represented a total gross weekly income of $692.00 and net income of $512.00. Both financial affidavits were filed on October 13, 1998.
At the dissolution of marriage hearing, Judge Gruendel approved a separation agreement executed by the parties. Said agreement provided for the defendant to pay $100.00 per week child support, plus one-half of the pre-school daycare (said amount being $77.50 as of the date of dissolution) and one-half of health insurance premium for the minor child if said insurance exceeds $5.00 per week. Both parties were canvassed by the Court concerning the provisions of the separation agreement. Judge Gruendel found that the child support payments agreed to by the parties were "consistent with child support guidelines". Judge Gruendel further stated as to the earnings and/or earning capacity of the defendant as follows:
 "And I would note that the attribution to Mr. Lanata of an earning capacity has been agreed to by the parties, is essentially very close to being the same attribution of earning capacity as was made for Mr. Lanata by Judge McLachlan at an earlier hearing. So the agreement is consistent with the child support guidelines with respect to the issue of child support. " (Plaintiff's Exhibit #3, page 14).
Judge McLachlan at a pendente lite hearing on July 29, 1998 annualized income and allowable expenses based on the financial affidavit filed by the defendant and testimony heard at a previous hearing on July 22, 1998. Judge McLachlan found net earnings for the defendant in the amount of $585.00 per week after deduction for taxes. It is clear by the record CT Page 6316 that Judge Gruendel found that the defendant's weekly income at the time of the trial coincided with Judge McLachlan's income finding of July 29, 1998 at the pendente lite hearing (Plaintiff's Exhibit #2).
The parties appeared before the Court on diverse dates commencing December 17, 1999 through May 3, 2000 and offered testimony and exhibits pertaining to the prosecution and defense of the defendant's motion to modify support. The defendant's financial affidavit dated December 17, 1999 states gross and net weekly income of $182.54 per week. The defendant operated a construction business known as Mike's Home Improvement as an independent contractor as of the date of the pendente lite and divorce hearings. The defendant's business was incorporated in July of 1999 prior to the motion to modify. He is an employee and shareholder of the company. He is a shareholder in the corporation with his girlfriend, who is also a stockholder and employee. His financial affidavit further states total weekly expenses of $885.14 and total liabilities of $26,478.00 with total weekly payments on said liability expenses of $28.38. The plaintiff's financial affidavit reflects a gross weekly income of $815.00 per week with a total net weekly income of $696. 00 per week. It is clear that the defendant requires substantial funds to make up the difference between his total net weekly income and total net weekly expenses and payments on liabilities.
The Court heard testimony from the defendant and his girlfriend concerning their financial and living arrangements. At the time of the dissolution of the marriage, defendant was operating a sole proprietorship business known as Mike's Home Improvement. His girlfriend, Kristin Norton, operated a bookkeeping business as a sole proprietor. Since their personal and business union, both the defendant and his girlfriend have utilized a CitiBank credit card for payment of personal expenses (i.e., the defendant and/or Kristen's personal expenses and living expenses while residing together at the home of the defendant located at 460 Miller Road, South Windsor, Connecticut). They also use said credit card for business charges for the defendant's construction business and Kristen's bookkeeping business. During the course of the relationship, the defendant incorporated his home improvement business and obtained a minority corporation status for bidding purposes through the issuance of stock to Kristen. They continue to use the CitiBank charge account for all personal and business related expenses.
There is a substantial dispute between the parties as to (1) the business income and expenses of the plaintiff's business, i.e., income received and expenses paid for the corporation, (2) the income and expenses for Kristen's bookkeeping business, and (3) personal expenses of the defendant and/or Kristen. The defendant and Kristen utilized the credit card account with CitiBank as the sole source of credit for all CT Page 6317 their personal and business charges. Kristen annually separates out the various charges and payments for state and federal tax filing purposes.
It is quite evident from the testimony and exhibits submitted at the hearings that the defendant's personal lifestyle and expenses were underwritten from income received by the corporation and/or gifted by Kristen Norton's father to her, the defendant and/or the Corporation. From April of 1999 through November of 1999, the defendant and/or Kristen received substantial sums of money from her father who operates a wholesale lumber company known as Brown Ryan Lumber Company, in the state of New York.
The defendant and Kristen testified as to the defendant's inability to earn income at the amount found by Judge McLachlan and incorporated in the divorce decree by Judge Gruendel on October 20, 1998. Since the dissolution decree, defendant complained that the only business client of the home improvement company has cut back the amount of work performed by the company. Further, a physical injury to the left shoulder of the defendant at Home Depot has resulted in his inability to do heavy lifting and/or heavy work. The defendant also claims the injury impacts his income.
Both the defendant and Kristen further testified that they were interested in operating a new business or franchise concerning the marketing of African hardwood. Said wood is distributed by Kristen's father's corporation. Defendant and Kristen went to New York City to a convention attended by her father. They were interested in obtaining all the information available concerning the start up of a business in Connecticut to supply and/or wholesale African hardwood.
After they visited with Kristen's father in New York, they received a check in the amount of $3,833.09 from Brown Ryan Company made payable to CitiBank. (Plaintiff's Exhibit 20). The check references an account of "M. Lanata". Said check was deposited in the CitiBank account of the defendant and Kristen to pay for various charges made on said account. They further received a check made payable from Brown Ryan in the amount of $510.86 on May 3, 1999. (Plaintiff's Exhibit 21). Said check was also payable to CitiBank. They further received a check in the amount of $1,080.78, (Plaintiff's Exhibit 22), and a check in the amount of $944.92, (Plaintiff's Exhibit 23), both checks drawn on Brown Ryan accounts payable to CitiBank. Another check in the amount of $809.04, was received by the defendant personally with said check drawn on the Brown Ryan Lumber Company account, (Plaintiff's Exhibit 24). On September 7, 1999, a check for $7,000.00 was deposited in the CitiBank account or a cash transfer was made from the Brown Ryan checking account directly to CitiBank, according to the testimony of Kristen. On CT Page 6318 October 4, 1999, a cash transfer was made from Maryland CSR to CitiBank from the account of Brown Ryan by way of a phone call transfer. On November 12, 1999, an additional sum of $4,600.00 was phone transferred from a Brown Ryan account to CitiBank.
In summary from April 18, 1999 through November 12, 1999 the defendant, his girlfriend, and/or CitiBank received funds totaling $31,778.69 from the Brown and Ryan corporate checking account. Kristen claimed that said sums represent gifts to her and not payment for services rendered or future business endeavors between she and the defendant, and her father.
After hearing the testimony of the defendant and his girlfriend and reviewing the voluminous exhibits submitted in the record, the Court can draw only one of two conclusions concerning the reason for the payment of said sums by Kristen's father. Said payments are either (1) compensation for work performed by the defendant on a property owned by a partner of Kristen's father in New York and/or payments for the development of a new business arrangement between the defendant, Kristen and Mr. Norton or (2) the receipt of the funds constitute regular gifts given by Kristin Norton's father for the benefit of both the defendant and his girlfriend to maintain their businesses and/or personal relationships.
The Court hereby finds that the sum of $31,778.69 received by the defendant and his girlfriend were in fact regular recurring contributions or gifts given to the defendant' domestic partner by her father for use of the defendant and Kristen for business and personal living expenses.[1] The child support guidelines submitted by the defendant utilize net weekly income of the defendant of $182.54 and income of the mother of the plaintiff at $815.00 per week resulting in a proposed child support payment by the defendant in the amount of $42.00 per week. Said guideline form does not include the gifts received from Kristen's father. (Emphasis added) Said sum must be included to arrive at a fair and just conclusion in determining whether a modification of child support is required by the facts of this case.
The Court, in reviewing the child support guidelines, shall deviate from the guideline amount of $42.00 per week on the basis of §46b-215a-3 (b)(1)(D) of the Connecticut Child Support Guidelines. The Court hereby finds that the defendant has received regular recurring contributions or gifts from his domestic partner, i.e., his girlfriend, Kristin Norton, received by her from her father, in an amount over $30,000.00 in calendar year 1999. These regular and recurring gifts are added to the income received by the defendant from his employment to arrive at an income figure that meets the defendant's weekly business and personal expenses including the child support and child care order. CT Page 6319 This inclusion results in a deviation from the child support guidelines denying the defendant's motion to modify. The defendant has relied on income and expenses through December, 1999 in furtherance of his motion to modify. His financial affidavit is dated December 17, 1999. The defendant's child support guideline form is dated December 3, 1999. The exhibits submitted by the parties also refer to "income and expenses" and "profit and loss" for calendar year 1999.
The defendant has failed to sustain his burden of proof concerning a motion to modify child support. Viglione v. Viglione, 171 Conn. 213
(1976), Vonna v. Vonna, 15 Conn. App. 745 (1988). Evidence in the record clearly indicates that the defendant is current in his child support obligations, his mortgage, his car payments, business payments, etc. and has paid a $5,000.00 retainer to his counsel. The defendant, by his own testimony, and as evidenced on the margin of his recently filed financial affidavit, has had his weekly expenses reduced in an extraordinary amount due to the gifts received by his girlfriend from her father and utilized to pay personal and business expenses. Even though the defendant earns inadequate income from employment, the recurrent gifts are a substitute for earned income resulting in a lack of a financial change in circumstances. The motion to modify child support is hereby denied.
Devine, J.